IIEARD NOVEMBER TERM, 1876.

POWERS *vs.* MCEACHERN.

Where, in an equity cause, an order is made referring certain issues to the jury, the parties who make no objection to the order at the time it is granted cannot afterwards make it the ground of an exception.

Where evidence is received without objection at the trial of an equity cause it cannot it seems, be afterward made a ground of exception.

A testator who had legitimate children by a wife from whom he had been separated many years, and a family of illegitimate children by a woman with whom he was cohabiting at the time he .made his will, devised and bequeathed his estate for the benefit of his wife and children: *Held*, Upon the proof, that by wife and children the testator meant his illegitimate children and their mother, and that they were entitled to the estate of the testator as his devisees and legatees.

Where a testator having a legitimate and also an illegitimate family devised his estate to the latter, and the former commenced an action against the latter, claiming the estate as the devisees and legatees meant by the testator, and making no claim to three-fourths thereof, under Section 4 of the Act of 1795, but demanding general relief: *Held*, That the plaintiffs by their complaint had made no such election as deprived them of their rights under the Act of 1795, and that under the prayer for general relief such rights could be established.

BEFORE TOWNSEND, J., AT DARLINGTON, NOVEMBER TERM, 1874.

This was an action by Charles Powers and others against James A. McEachern and others.

The case on which the appeal was' heard is contained in the decree of the Circuit Court, the amendment agreed on by counsel and the will of John G. Powers, below set forth.

The decree of the Circuit Court is as follows :

TOWNSEND, J.   John G. Powers died in 1867, leaving a considerable real and personal estate. Soon after his death letters of administration' upon his personal estate were duly granted to Sidney F. Cole. Some time in 1869 the last will and testament of John G. Powers was discovered and admitted to probate. The letters granted to Sidney F. Cole were then revoked, and, the executor named in the will having predeceased the testator, letters of administration *cum testamento annexo* were granted to James A. McEachern. On the twenty-first day of October, 1870, a decree was rendered by the Probate Court for Darlington County partitioning and distributing all the property of the testator left after the payment of his debts, according to the provision of the will, among those claiming at that time to 'be the heirs and devisees of the testator. Some time in 1872 this complaint was filed by the plaintiffs against the defendants, for the purpose of impeaching the

decree of the Probate Court for an account from the administrator *cum testamento annexo*, and a distribution and partition of the property left by the testator among the plaintiffs, as his heirs and devisees.    The allegations, substantially, are : That the plaintiffs are the children and lawful heirs of John G. Powers and Sarah Powers, his wife; that John G. Powers and Sarah Turner inter-married on the fourth day of January, A. D. 1813; that Sarah Turner died in May, 1859; that John G. Powers left him surviving as his sole heirs at law and devisees the plaintiffs; that Powers died, leaving a considerable estate; that letters of administration were granted to Sidney F. Cole and afterwards revoked upon dis-covery of his last will and testament; that the executor therein named predeceased the testator, and letters *cum testamento annexo* were duly granted to James A. McEachern ; that the youngest of the plaintiffs is above the age of twenty-one years, and, according to the provisions of the will partition can be made; that the defendants confederated together to defraud the plaintiffs, and sought in the Probate Court to partition the property left by John G. Powers among his pretended children and wife; that the plain-tiffs, being non-residents of the State, had no knowledge of the proceedings instituted for this purpose; that a decree of the Probate Court was rendered partitioning and distributing the estate among the parties claiming to be the heirs at law and devisees of the testator.

The plaintiffs pray that the decree of the Probate Court may be impeached for the fraud, that there be a full accounting by the administrator and his predecessor, and by all the defendants who have in any manner intermeddled with the said property or recov-ered any share or portion thereof; that they have judgment for the recovery of the real estate and delivery of the assets and per-sonal property, and for judgment against the administrators for any amount that may be upon a full accounting found due, also for partition and distribution according to the terms of the will among the plaintiffs, and for general relief.

The defendants in their answer admit the death of John G. Powers, the grant of administration and administration *cum testamento annexo*, the distribution and partition of the testator's estate in accordance with the decree of the Probate Court, the pro-visions of the will as substantially set forth in the complaint, but deny all the other allegations.

The defendants, Sidney F. Cole and James A. McEachern, also claim that they have been discharged by a proper · Court and protected in this way from the demands of the plaintiffs. At the November Term of the Court of Common Pleas for Darlington, of the year 1873, the case was heard. Certain issues of fact raised by the pleadings were submitted to a jury. The first was whether John G. Powers and Sarah Turner were lawfully married; the second, whether Sarah Turner was a free person of color or a white woman; third, whether John G. Powers, when he used the terms in his will of "wife and children," meant Sarah Turner and her children or Sarah Conner and her children. The finding of the jury in the first issue was "that John G. Powers was married to Sarah Turner." On the second, "that Sarah Turner was a free person of color." And on the third, "that John G. Powers, when he used the term 'wife and children' in his will, meant Sarah Conner and her children."

At the November Term, 1874, of the Court of Common Pleas for said County, the case was heard upon its merits, and the question before the Court for decision is whether the plaintiffs are entitled to the relief demanded in their complaint. The plaintiffs, it will be observed, claim to be the heirs at law and devisees of John G. Powers, and pray for a partition of the property of the testator according to the terms of the will. They claim under the will, and not under the Act of 1795.

The fact of the marriage of John G. Powers and Sarah Turner is unquestionably established. This is the finding of the jury, and a review of the testimony satisfies my mind that the verdict is correct.

The status of Sarah Turner at the time of the marriage is likewise established by the verdict of the jury. An examination of the testimony irresistibly conducts my mind to the same conclusion.

The meaning of the testator when he used certain terms in his will, as found by the jury, seems to be substantiated by the evidence. It is asserted by the plaintiff, however, that there was error in allowing parol testimony to go to the jury, because in effect it was a violation of the rule that parol testimony will not be admitted to vary, alter or contradict a written instrument. At the time this issue of fact was submitted to the jury no objection was urged by the plaintiffs either to the submission of the issue or the admission of parol testimony to explain the terms employed in the

will. It is too late to urge the objection to the competency of the testimony. Assuming that it is not, was the testimony incompetent? The identity of the thing granted or devised can be ascertained by resort to extrinsic testimony. The identity of the person to whom the gift or conveyance is made can be ascertained in the same way. Such evidence is absolutely indispensable to the execution of all testamentary papers.—Greenleaf on Ev., 266; *Pell* vs. *Ball,* Speer Eq., 83. I think the evidence was admissable. Suppose the testimony was incompetent and the ascertainment of the intention of the testator was a question of law, to be determined by an examination of the terms of the will, the same conclusion as that reached by the jury can be attained. The testator, in the second clause, directs that his property shall be kept together until his youngest child attain the age of twenty-one years. Sarah Conner and her children were living upon the land of testator at the time of the execution of the will. The testator mnst have alluded to them when he directed that they should continue to live upon it until a certain event happened. Sarah Powers was living in another State with her children. If the marriage with her took place in 1813, the youngest child of that marriage must have attained the age of twenty-one long before the execution of the will, and the testator, therefore, could not have intended her and her children when he used the words " wife and children." In the third clause he directs a partition among his wife and children when his youngest child then living attains the age of twenty-one years. The language employed in this clause indicates that the intention of the testator was to give his property to Sarah Conner and her children, who were living on the land at the time of the execution of the will. Taking all the provisions of the will with its language into consideration, my conclusion is that the testator meant by the words " wife and children" Sarah Conner and her children.

Certain conclusions of law must now be attained to decide this case. Was the marriage between John G. Powers and Sarah Turner valid? It appears that the latter was a free person of color; and the question arises, could a white man contract marriage with a free person of color in 1813 in this State? There was no statute in South Carolina at the date of this marriage inhibiting white persons from marrying free persons of color. In the absence of such a prohibition, was it contrary to the common law or the decisions of the Courts? In the case of the *State* vs. *Harden,* it

was held that "free negroes, without any of the political rights which belong to a citizen, are still to some extent regarded by the law as possessing both natural and civil rights. The rights of life, liberty and property belong to them, and must be protected by the community in which they are suffered to live. They are regarded in law as persons."

In the case of the State vs. Hill, (Spear L., 158,) it was held that "free negroes have all the rights of property and protection which white persons possess, with the exception that they cannot with force repel force exhibited by a white man," &c. Justice O'Neall, in his Digest on the Negro Law, in 1848, Section 46, says free persons of color are sui juris. In Section 47, he says: "They may contract and be contracted with. Their marriages with one another and even with white persons are legal." It would seem, therefore, from the authorities in this State, that a free person of color could contract marriage with a white person, however repugnant it may have been to the public sentiment prevailing upon the subject. There was evidently a distinction drawn by the Courts between free persons of color and slaves, so far as their civil rights were concerned. The one could contract and be contracted with, while the other could not.

If the marriage was merely a civil contract, and the free person of color could contract, what was to hinder him entering into the contract of marriage with whomsoever he chose? Such a contract may have been in contravention of public policy or repugnant to the public sentiment, yet the General Assembly did not prohibit such marriages by statute, and the Courts did not inhibit them by their decisions. The failure of the Legislature to provide a statute on the subject is a presumption of the acquiescence of the State in contracts of this kind thus made. It is my opinion that the marriage of John G. Powers and Sarah Turner in 1813 was legal and valid. The only remaining question for consideration and decision is, are the plaintiffs entitled to the relief demanded in the complaint? The plaintiffs claim under the will of John G. Powers. Is the claim thus formally set up in the complaint an election on the part of the plaintiffs, and is it such an election as can now be retracted? The Act of 1795 declares that any gift to bastard children shall be null and void for so much of the value thereof as shall or may exceed such fourth part, &c.

In the case of *Hull* vs. *Hull*, (3 Rich. Eq., 81,) the Court says: The Act does not say in words what disposition is to be made of the portion of the gift to the illegitimate child that is declared void. That is left to implication. But by incidental construction it is not absolutely null and void, but voidable at the instance of the lawful wife and children.

In *Owens* vs. *Owens*, it was held that the will of the testator was good and valid against all the world, except as against the lawful wife and children; and in *Breethamper* vs. *Bauskett*, (1 Rich. Eq., 465,) it was held by Chancellor Harper that their right to vacate the gift for the excess was so entirely a personal privilege to the wife and children that it did not survive to the executor. In the same case it is held that the interest which the wife and children take in the gift is merely a claim entirely personal to them— a claim to call on the illegitimate child for the amount or value of what said child has received over the one-fourth part of the testator's estate. The legal title of the bastard is good and perfect, subject to this purely personal equity created by the Act in favor of the wife and children. The same doctrine held in this case has been enunciated in others.

The gift and devise in the will of John G. Powers was not void, but voidable at the election of the wife or legitimate children of Powers. The right to elect on their part was personal. What is the right of election given to the wife or legitimate children? In the case of *Buist* vs. *Davis*, (3 Rich. Eq., 300,) it is held that "whenever two rights are alternately created or given, either in express terms or by construction, the party to whom they are given is entitled to only one of the two, and must elect between them, but after he has made his election he is bound and will not be allowed to elect again unless he can show some equitable circumstance entitling him to retract the choice he has made." In the same case it is held "there is some difference in this matter of election, owing to the quality of the rights among which the election is to be made, *i. e.*, whether they are legal or equitable. But whenever an election has been made, either at law or in equity, it is a satisfaction of an alternative right, and the party will not be allowed to retract unless upon grounds of equity shown to exist by evidence inherent in the circumstances or extrinsic." The plaintiffs in this case, as the legitimate children of the testator, had the alternative right of claiming under the will of the testator, as his heirs at law and

devisees, or under the Act of 1795, which declared the gifts and devisees voidable as to all the estate except the one-fourth thereof. The alternative rights are legal. The wife in her lifetime made no election. The right does not survive to her legal representatives or heirs. Have the plaintiffs, as the legitimate children, made an election between these alternative rights ? In the complaint they positively elect by claiming under the will as the heirs and devisees of the testator, and by praying for a partition of the estate according to the provisions of the will. Their attorney was no doubt acquainted with all the circumstances of the case, as well as conversant with their rights, and, after communication with them, filed the complaint. There is, therefore, a presumed knowledge on their part of all their rights and the circumstances of the case, and the election was made of the alternative rights by them with full knowledge. The election has been in the complaint. Have the plaintiffs a right to retract? This they can do only upon grounds of equity shown to exist by evidence inherent in the circumstances or extrinsic. There is no evidence in the case showing any grounds of equity upon which they should be allowed to retract. If there are none shown to exist by evidence inherent in the circumstances, they should not be allowed to retract; as before observed, they had full knowledge of all the circumstances and of their rights before the election was made. In the circumstances themselves there is nothing that shows that grounds of equity exist upon which they should be allowed to retract. They are, therefore, bound by the election, and it operates as a legal bar by way of estoppel against the claim of the alternative. If they are bound by the election, they can, therefore, take nothing by the will, as they are not the parties intended to be the devisees of the testator, and they have made an election which renders the will no longer voidable, but valid. But if the plaintiffs can retract, there is no application of the kind made by them to the Court. The election has been made in the complaint, and the rights of the parties must be determined in accordance with the election. In the argument, the counsel representing the plaintiff asserted a right of retraction, but no formal application was made that the plaintiffs be allowed to do so. It is the judgment of the Court that the plaintiffs are not entitled to the relief demanded in their complaint.

It is, therefore, ordered and adjudged that the complaint be dismissed.

The amendment agreed on by counsel is as follows:

It appeared in evidence that the ceremony of marriage of John G. Powers with Sarah Turner took place in 1812 or 1813, and that they separated in 1818 or 1819; that in 1834 or 1835 Sarah Turner Powers removed with her children to the West; there was no evidence of any intercourse between the two after the separation; that not long after this John G. Powers moved from the County of Marion to the County of Darlington and commenced living with Sarah Conner. There was no evidence for or against the fact of a formal marriage between the two, but there was abundant evidence that he treated and represented her (the said Sarah Conner) as his wife, and that she was so regarded in the community from that time until the death of John G. Powers. It was in evidence that she had renounced her dower to a tract of land sold by him. The defendants, with the exception of those mentioned in the complaint as administrators, guardians or husbands, are the issue of John G. Powers' and the said Sarah Conner. The will of John G. Powers being without date, it was proved by a witness to it that it was executed certainly before 1858; that it was drawn by George W. Dargan, the late Chancellor of this State, whilst he was practicing law. Another witness, with whom Powers lived as overseer in 1843, narrates a conversation in which Powers advises with him as to the making of a will, and he advised him to get George W. Dargan to draw it.

In 1843, Powers had natural children by Sarah Conner who were infants. The cause of the separation of John G. Powers and Sarah Turner Powers was, according to one witness, " that he had spent her property and had no further use for her," and, according to another, " that he grossly mistreated her."

The will of John G. Powers is as follows:

I, John G. Powers, of sound and disposing mind, memory and understanding, do make and ordain the following as my last will and testament: First. It is my will and desire that from the debts due me, if that be sufficient, all my just debts be paid. Second. After the payment of my debts, it is my will and desire that all my estate, both real and personal, be kept together, in the hands and under the control of my executor, until my youngest living child shall attain the age of twenty-one years; and until this event

shall happen, it is my will and desire that my wife and all my children, adults as well as infants, be permitted to live upon my plantation, and my wife and such of my children as shall desire to live upon my plantation shall participate in the benefits of the labor of the negroes and the crops made upon the land, in the way of a common stock, such as are able contributing their own labor, and the younger children receiving such common education as can be had in the neighborhood. When my youngest living child shall attain the age of twenty-one years, it is my will that all my estate, both real and personal, be divided among my wife and all my then living children equally. The issue of any deceased child (if there be any such) shall, in the division, represent their parents. If my wife should not then be living, her share is to be equally divided among my children, as the rest of my estate is directed to be divided. If she should then be living and receive an equal share with my children, she shall hold and enjoy the same during the period of her natural life, and at her death the same shall be equally divided among my then living children, the issue of any deceased child representing in such division their parents. I nominate, constitute and appoint Julius A. Dargan the executor of this my last will and testament. On the first page the words "benefit of the" and the word "wife" interpolated.

The plaintiffs filed the following exceptions to the Circuit decree:

Plaintiffs except to the decree for the following grounds of alleged error:

1. Because the question whom the testator meant "when he used the words *'wife and children,'*" as between a lawfully married wife and legitimate children on one hand, and a mistress and bastard offspring on the other, was not an issue in the case. But if an issue, it was one of law and not of fact, and the verdict of a jury could not decide or affect it. The Court should have construed it in favor of the lawfully married wife and legitimate children, to the exclusion of the mistress and bastards.

2. Evidence *de hors* the will was inadmissable and the objection in time.

3. The judgment should have been in favor of the claim of the wife and children under the will. But if not under the will, then under the Act in reference to gifts and devises to bastards.

4. The doctrine of election and estoppel has no application to the case.

The plaintiffs appealed.

*Charles*, for appellant.

*McIver* & *Boyd*, contra.

May 18, 1876.   The opinion of the Court was delivered by

MOSES, C. J.   If the order directing the issue to the jury to de-termine the identity of the persons intended by the will of the testator, Powers, to be the objects of his bounty was erroneous, the appellants, by interposing no objection in the Court below, are pre-cluded from submitting any exception here.   So, too, as to the grounds, which charges error in receiving evidence *de hors* the will. The competency of such testimony was not resisted on the trial, and its admission, therefore, cannot be now questioned.—*Abrahams & Son* vs. *Kelly*, 1 S. C., 235; *Shelton* vs. *Maybin*, 4 S. C., 541; *Fox* vs. *Railroad Company*, *ibid*, 543.   The order for the issue, it is alleged, was made by consent.   Certainly it was without resist-ance by either party, and it is not easily perceived how the jury could have ascertained to whom the term "wife and children" was to apply without a resort to parol testimony.   Besides all this, the Judge, independent of the verdict, reached the same conclusion by inferring the intention of the testator from the whole language of the will itself and the relation in which he stood at the time of its execution both to Sarah Turner Powers and her children and to Sarah Connor Powers and his issue by her.

It is conceded, if the first marriage was legal, as the Circuit Judge has adjudged, that the provision for Sarah Connor Powers and her children would be voidable at the instance of the lawful wife or chil-dren under the fourth Section of the Act of 1795, (General Statutes, 425,) to the extent of all exceeding one-fourth of the clear value of the estate of the testator after the payment of his debts.   It is urged, however, that they have lost whatever claim they may have had under the statute by electing to claim under the will.   This objection is groundless.   The doctrine of election can only apply to inconsistent gifts by one to the same party, where, from the apparent intent of the donor, expressed or implied, the acceptance of either by the donee precludes him from all right to the other.

Here the respondents insist and the Court has decreed that the wife and children take nothing under the will; and yet it is contended that a mere claim to its provisions deprives them of the benefit which the law has secured by the statute in the very event of a will by a husband or father disposing of his whole estate to a woman with whom he has lived in adultery or his bastard children. The inconsistency is apparent from the mere statement of the proposition. There must be alternative gifts before the parties can be put to their election. As is said in *Buist* vs. *Dawes*, (3 Rich. Eq., 300,) "wherever two rights are alternatively created or given, either in express terms or by construction, the party to whom they are given is entitled to only one of the two and must elect between them." Even if the case could be regarded as one involving the doctrine of election, as Mr. Adams in his Treatise on Equity, 96, says, "the electing party is entitled to know both interests; and the mere fact that the benefit has been conferred, or even that it has been accepted in ignorance of the conveyance, does not bind his right." To the same effect are the authorities in this State, of which it is only necessary to refer to *Gist* vs. *Cattel*, 2 DeS., 54; *Hall* vs. *Hall*, 2 McC. Ch., 269, and *Pinckney* vs. *Pinckney*, 2 Rich. Eq., 218. To affirm, as is done in the decree, that "the election has been in the complaint," would carry the doctrine to an extent entirely inconsistent with the principles on which it is founded.

While the Court would not be generally disposed to grant relief beyond that which is specifically demanded in the complaint, yet where it contains also a prayer for general relief, and the rights to which the plaintiff may be entitled are affected by the acts of the defendants in the very subject matter in which the plaintiffs assert an interest, it will not dismiss the action and impose the necessity of further litigation and expense provided the proper parties are before it in the pending suits,—more especially when the Circuit Judge, as in the case before us, discusses and reviews the very grounds upon which the plaintiffs are entitled to relief, and only withholds it from his reviews in respect to the election, which, in his judgment, debars him from extending it. His error in that regard is made one of the grounds of appeal, and, by the argument on both sides, is recognized as properly submitted to the correction of this Court. While the complaint may not be as comprehensive as it might have been in stating all the grounds upon which relief was sought, its main purpose was to subject the estate of the testa-

Columbia, November, 1876.

tor, in the hands of the defendants, to a full accounting. The mere fact that the plaintiffs claimed a partition and distribution under the will should not deprive them of the relief to which it is found they are by law entitled, especially when the question as to their right in the very particular was discussed in the trial below, is made a point in the decree, and by appeal is brought for revision. In fact, the 190th Section of the Code provides that "no variance between the allegation in a pleading and the proof shall be deemed material unless it have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits."

While, for the reasons stated, so much of the decree as establishes the identity of the persons referred to in the will must be affirmed, it is ordered and adjudged that the plaintiffs, the children of the said John Powers by Sarah Turner Powers, his wife, are entitled to so much of the real clear value of the whole estate of the said testator, after payment of his debts, as shall exceed the one-fourth amount or value thereof.

The case is remanded to the Circuit Court for such orders as may be necessary to give effect to the judgment of this Court, question as to the costs to be hereafter determined.

*Wright*, A. J., concurred.

*Willard*, A. J., concurred, and filed the following separate opinion:

The will, I think, must be construed as intending legitimate children and excluding illegitimate. The rule of evidence rests on a legal presumption, founded on public policy, and cannot be set aside on merely speculative grounds. The result of the evidence is that the testator at the time of making his will had a lawful wife and children by her, and that he had lived for many years with a woman who was not his wife, and had had children by her. There is nothing in the will to indicate that the testator used the words "wife" and "children" in any enlarged or peculiar sense. The law, on grounds of public policy, declares that a lawful wife and legitimate children are intended alone by these words. The case of one living with one who is not his lawful wife and having children by her is the very case to which the policy in question has reference, and it would be strange, indeed, if this very case contemplated by the law should, without extrinsic aid, be able to defeat the policy

of the law and destroy this rule of evidence arising from such policy.

I cannot agree in holding that the order referring issues to the jury had the effect of making their verdict conclusive of a question of law. Without denying that parties may stipulate in such a way as to make a trial by jury equivalent to a decision by an arbitrator, I think that such a construction cannot be put on the order in question.

Parties are authorized to select by their consent the tribunal before which their issues may be tried, but it must be assumed until the contrary appears that such consent was made in subordination to the nature of such tribunal and the rules of law prescribed for its action. It would be most dangerous to construe orders of this class as deranging or dispensing with the wholesome machinery of the law on grounds admitting of any dispute as it regards the intention of the parties. One of the advantages of the Code is that it facilitates the trial of issues of fact of an equitable nature by juries, and that advantage would seldom be employed voluntarily if parties were in danger, upon subtle constructions, of having the judgments of unlearned jurors on questions of law substituted for those of the Judges.

I am of opinion that the verdict has no other effect than that of a verdict taken upon questions submitted by a Court of equity, formerly through the form of feigned issues, but now through an order settling issues, as affecting the application, by the Court, of legal and equitable rules to the facts of the case.

I think that the judgment dismissing the complaint should be set aside, and the claims of the lawful wife and children of the testator established by a decree of the Circuit Court.