494 S.E.2d 823

**Thomas A. LOVETT, Personal Representative of the Estate of Thomas Henry Lovett, Respondent,**

v.

**Violet Mae Kimble LOVETT, Appellant.**

No. 2742.

Court of Appeals of South Carolina.

Submitted Sept. 9, 1997.

Decided Nov. 3, 1997.

Rehearing Denied Jan. 21, 1998.

Refiled Jan. 23, 1998.

---

John F. Hardaway, Columbia, for appellant.

Kenneth B. Wingate, Columbia, M. Gwyn DuBose–Schmitt, Lexington, for respondent.

HEARN, Judge:

Violet Mae Kimble Lovett appeals from the order of the probate judge invalidating a life estate left to her under the will of Thomas Henry Lovett, and denying her the right to a

statutory elective share of his estate. We affirm in part and reverse in part.

## FACTS

Lovett and Appellant were married on May 1, 1983, in Richland County. Prior to their marriage, they had lived together for ten years. Lovett died of a heart attack on October 16, 1994. In his will, he left Appellant a life estate in his home, subject to certain conditions. The will provided:

I hereby give, devise, and bequeath unto my wife, VIOLET MAE KIMBLE LOVETT, my home located on Hardscrabble Road, near Columbia, South Carolina, for the term of her natural life, a life estate, provided however, that she (1) continues to occupy the home; (2) that this provision is null and void should she remarry; (3) that this provision is null and void should we divorce or be separated at the time of my death; and (4) provided that she and she alone occupies the home.

Lovett left the remainder interest and residuary estate to his three children: William L. Lovett, Susan Lovett, and Thomas A. Lovett. Thomas A. Lovett was ultimately appointed by the probate court as Personal Representative of the estate. Thereafter, he brought this action seeking to declare the marriage invalid, and to bar Appellant from receiving the life estate and any elective share.

Appellant had been married eight times prior to her marriage to Lovett.[1] Although her second through fourth mar-

---

1.

Table of Wife's Marriages

| | | | |
|---|---|---|---|
| 1. | Bennie Gunter, | married 2–22–49, | no record of divorce or annulment |
| 2. | Richard L. Edmisson, | married 4–5–51, | marriage annulled 10–31–51 |
| 3. | Elbert Wooten, | married 3–3–52, | divorced 12–1–54 |
| 4. | Wilbert R. Corbett, | married 10–10–55, | divorced 5–13–57 |
| 5. | Frank L. Liebl, | married 6–5–57, | no record of divorce or annulment |
| 6. | James R. Blizzard, | married 7–21–62, | no record of divorce or annulment |
| 7. | Robert F. Coleman, | married 10–26–64, | no record of divorce or annulment (died 3–21–91) |

riages ended in either divorce or annulment, there is no record of a divorce or an annulment for her first, fifth, sixth, seventh, or eighth marriage.[2]

The probate court judge found Appellant was not entitled to a life estate in the marital home, ruling Lovett's "clear intent in his Will as evidenced by the enumerated conditions placed upon [Appellant's] enjoyment of the life estate was that she receive her life estate only if she were, in fact, his legal spouse at his death and remained his legal widow after his death." The judge also found that because Appellant was not Lovett's surviving spouse, she was not entitled to an elective share of the estate. The circuit court judge affirmed the probate judge's order.

## STANDARD OF REVIEW

In a legal action appealed from the probate court and affirmed by the circuit court, the standard of review is whether any evidence supports the factual findings of the court below. *Dean v. Kilgore*, 313 S.C. 257, 260, 437 S.E.2d 154, 156 (Ct.App.1993).

## I.

Appellant first argues the probate judge erred in finding she was not entitled to a life estate in the marital home. We agree.

There is ample evidence in the record to support the probate judge's ruling Appellant's marriage to Lovett was

---

8. John M. Coogler,      married 7–18–69,      no record of divorce or annulment (died in 1971)

9. Thomas H. Lovett,      married 4–25–83,      died 10–16–94

2. Appellant married her first husband in 1949. We cannot tell, however, whether this marriage was ever terminated because the South Carolina Department of Health and Environmental Control does not maintain statewide divorce records prior to 1962. Furthermore, no record exists of a divorce or annulment from Appellant's fifth, sixth, seventh, or eighth marriages. Nevertheless, her eighth husband died before her marriage to Thomas Lovett. Thus, giving Appellant the benefit of every doubt, there is no record of a divorce or an annulment in her fifth, sixth or seventh marriages, and both James Blizzard and Robert Coleman were living at the time of her marriage to Lovett.

invalid. Thus, the issue in this case is whether a devise leaving property to a named person designated as "wife" may be upheld despite the fact that the marriage is later found to be invalid.

While South Carolina courts have not addressed this issue, it appears the question should turn on whether the term "my wife" is merely descriptive, or is a statement of legal capacity. As stated in *Page on the Law of Wills:*

> If a gift is made to one who is named or otherwise identified, and who is also described in the will as the husband or wife of a given person, and such beneficiary is the ostensible, but not the legal husband or wife of such a designated person, the validity of the gift depends on the intention of testator in adding such description of relationship. If it is added by way of further description, which is usually the case, the beneficiary will take.... If the designation of relationship is added to indicate the character or capacity in which the beneficiary can take, the gift fails.... Most courts assume that, as a matter of construction, the designation of the relationship is a mere matter of description, and they then proceed to inquire whether the mistake as to the relationship or any fraud of the beneficiary defeats the gift.

William J. Bowe & Douglas H. Parker, *Page on the Law of Wills* § 34.2, at 403–04 (1961) (citations omitted).

Other jurisdictions considering this question have found the term "my wife" to be merely descriptive and have allowed the devise to stand, even though the named devisee is later found not to be the testator's wife. In *In re Jones' Estate*, 195 Okla. 168, 155 P.2d 980 (1945), Mr. and Mrs. Jones went through a ceremonial marriage and lived together as husband and wife for eleven years until his death. *Id.* at 981. In the will, Mrs. Jones was mentioned by name and described as "my beloved wife." *Id.* After Husband's death, it was discovered that Mrs. Jones had never divorced a prior husband. *Id.* Nevertheless, the court allowed Mrs. Jones to take under the will's provisions, finding the term "my beloved wife" was merely descriptive and that Mr. Jones' clear intention was to provide for Mrs. Jones. *Id.* at 981–82.

Similarly, in *Parker v. Oliver*, 52 R.I. 117, 158 A. 146 (1932), the court held valid a devise to Mary Oliver designating her as the testator's "present wife," despite the fact that Mrs. Oliver had not divorced a previous husband. The court held that in the absence of fraud, Mrs. Oliver could take under the will, even though she was not the testator's legal wife. *Id.* at 147.

As stated in 80 Am.Jur.2d *Wills* § 1223, at 337 (1975):

> The cases appear to support the conclusion that under a testamentary gift to the "husband," "wife," or "widow" of a designated person, one who, although he or she went through the ceremony of a marriage with the person in question, is actually not the latter's lawful spouse or relict because the attempted marriage was illegal as being biga- mous, ... is nevertheless entitled to take the gift, in the absence of any indication of a contrary intention on the part of the testator.

The case of *Powers v. McEachern*, 7 S.C. 290 (1876), is also instructive. In *Powers,* the testator left a devise to "my wife." *Id.* at 298. At the time of his death, testator had been living with one woman but was married to another. *Id.* at 297. The court found the devise to be to the woman with whom he had been living and whom he had treated and represented as his wife, even though she was not legally his wife. *Id.* at 301. Thus, the court implicitly found the words "my wife" to be merely descriptive of the relationship and not a limiting phrase indicating the capacity in which she could take.

We hold the words "to my wife Violet Mae Kimble Lovett" indicate a clear intent on the part of Lovett to provide for Appellant. The words "my wife" were descriptive only and were not intended to limit the capacity under which she could take. This holding is also consistent with the four conditions placed on the devise. It was uncontradicted that the parties continued to live together as husband and wife until Lovett's death; they were neither divorced nor separat- ed. Appellant has not remarried and lives alone in the home. The probate court judge therefore erred in finding Appellant was not entitled to the life estate devised to her in Lovett's will.

## II.

■ Appellant next argues the probate judge erred in denying her a statutory elective share in Lovett's estate. We disagree.

Under section 62–2–201 of the South Carolina Code, a "surviving spouse" has the right to take an elective share of one-third of the decedent's probate estate. S.C.Code Ann. § 62–2–201 (Supp.1996). "Surviving spouse" is defined in the negative as not including one who is divorced from the decedent or whose marriage to the decedent has been annulled. S.C.Code Ann. § 62–2–802 (1987).

We recognize that some jurisdictions have adopted the "putative marriage doctrine." Under this theory, a spouse who believed in good faith that he or she was validly married, and who had participated in a ceremonial marriage, is allowed the civil effects of a valid marriage even though the marriage is found to be void due to an impediment. Christopher L. Blakesley, *The Putative Marriage Doctrine*, 60 Tul.L.Rev. 1, 6 (1985).

While Appellant argues she was wrongfully denied her elective share, she did not argue either at trial or on appeal for the adoption of the putative marriage doctrine. In addition, the trial judge never made any finding, nor did Appellant request a finding, that she believed in good faith in the validity of her marriage to Lovett. Given the number of her previous marriages and their largely unresolved status, the issue of her good faith would certainly be an unresolved question of fact for determination by the probate judge. Because Appellant failed to request such a finding, we decline to address the issue on appeal. *See Townsend v. City of Dillon*, 326 S.C. 244, 486 S.E.2d 95 (1997) (an issue not ruled upon by the trial judge is not preserved for appeal). We therefore find no error in the probate judge's decision to deny Appellant an elective share in Lovett's estate.

Accordingly, the decision of the lower court is

AFFIRMED IN PART AND REVERSED IN PART.

HOWELL, C.J., and STILWELL, J., concur.